UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                                            CASE NO. 6:20-cr-00088-CEM-LRH

KATHRYN SMITH

### UNITED STATES' MEMORANDUM ON GUIDELINES CALCULATION OF SOPHISTICATED MEANS

The United States respectfully submits the following memorandum for the Court's consideration as to whether Kathryn Smith ("defendant") qualifies for a two level offense level increase under USSG §2B1.1(b)(10)(C). The defendant's efforts to conceal her embezzlement qualify as sophisticated means, and a two level offense level increase under USSG §2B1.1(b)(10)(C) is appropriate.

    **I.**     **Background**

In 1985, Kathryn Smith began working at a full-service title insurance company located in South Florida (referred to herein as the "Title Insurer") Doc. 14 at 19. The Title Insurer eventually opened five other locations for its business, including one in Orlando, in the Middle District of Florida. *Id.* Smith relocated to the Orlando Office, and was given a 20% ownership. *Id.*

From at least December 2012 to May 2019, the defendant embezzled $472,765.95 from the Title Insurer. *Id.* The defendant made the embezzlements by using her access to the Title Insurer's bank accounts to transfer funds to accounts for which she had control and by writing checks to herself without any authorization. *Id.* In addition, the defendant used funds from the Title Insurer to pay some of her personal credit cards charges, insurance for her adult child, and other miscellaneous amounts to which she was not entitled. *Id.*

To conceal these embezzlements and her fraud, the defendant devised a "mortgage lapping" scheme that involved her moving money between various property closings to conceal the shortage of funds that she had caused. Doc. 14 at 22. In particular, the defendant would take funds recently received for a loan and use them to pay an older loan. *Id.* In some cases, the defendant would make any necessary mortgage payments (out of the operating bank account) for the loan for which the funds were initially intended. *Id.* When funds for another new loan were received, the defendant would use the new funds to pay off the old loan. *Id.*

The defendant also would often make multiple credit and debit entries in the Title Insurer's ledgers in an attempt to balance out the loan file and to disperse funds to pay off mortgages past the settlement date. *Id.* The defendant

created some fraudulent documents and posted them to the closing file in an attempt to justify some of the ledger entries. *Id.* These usually were fraudulent payoff statements from lenders and altered HUD-1 statements. *Id.* These letters and settlement statements would state a payoff amount that did not apply to the actual property, but was an amount that the defendant needed to debit from the file in order to pay off a past loan. *Id.* After her fraud scheme was detected, the defendant admitted to the owner of the Title Insurer that she went back into transaction files and deleted some of the false documents. *Id.* The defendant executed her wire fraud scheme with respect to several loans handled by the Title Insurer. *Id.*

The defendant pled guilty to an information charging her with one count of wire fraud on July 7, 2020. Doc. 16. In its initial calculation of the defendant's guidelines, United States Probation applied USSG §2B1.1(b)(10)(C), increasing the defendant's base offense level by two.

## II. Argument

The defendant's efforts to conceal her embezzlement qualify as sophisticated means under USSG §2B1.1(b)(10)(C) because the defendant gained access to the funds using her position of trust, falsified numerous documents, utilized a system of mortgage lapping to conceal fund deficits, and in so doing, was able to conceal her fraud for approximately seven years.

Under USSG §2B1.1(b)(10)(C) "[if] the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, increase by 2 levels." The application notes for this section explain:

> For purposes of subsection (b)(10)(C), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

USSG § 2B1.1(b)(10)(C), comment. (n.9(B)).

Although the commentary for USSG § 2B1.1(b)(10)(C) lists out specific examples of schemes that may qualify as "sophisticated means," the Eleventh Circuit has made clear that this list of examples is not exhaustive. *See United States v. Clarke*, 562 F.3d 1158, 1165 (11th Cir. 2009) (explaining that a defendant need not use off shore accounts or transactions through fictitious entities for the sophisticated means enhancement to apply). The Eleventh Circuit has repeatedly held that the totality of the defendant's conduct should be considered in determining if the scheme involved sophisticated means. *United States v. Moran*, 778 F.3d 942, 977 (11th Cir. 2015) (stating that when determining if the defendant qualifies for the increase, the proper focus is on

the offense conduct as a whole, not on each individual step."); *United States v. Barrington*, 648 F.3d 1178, 1199 (11th Cir. 2011) ("Each action by a defendant need not be sophisticated in order to support this enhancement. It is sufficient if the totality of the scheme was sophisticated.").

In *United States v. Feaster*, 798 F.3d 1374 (11th Cir. 2015), for example, the Eleventh Circuit upheld an offense level enhancement for sophisticated means after reviewing the totality of the defendant's conduct, even though that conduct did not match the examples in USSG § 2B1.1(b)(10)(C), comment. (n.9(B)). In *Feaster*, the defendant worked for the Department of Veterans Affairs (VA) and used her position to steal government funds. Each time the defendant stole VA funds she, "(1) prepar[ed] a fraudulent purchase order to obtain approval in the first place to use the Purchase Card, (2) [bought] gift cards with the Purchase Card, thereby building in another layer of concealment similar to the straw man or accounts under other names used in Campbell and Clarke, to obscure her fraudulent personal purchases, and (3) [made] fictitious entries in the VA's system to reconcile the original purchase order with the amount of money that she charged to the Purchase Card to obtain payment for the charges that she fraudulently incurred." *Id.* at 1382. The defendant did these acts repeatedly throughout the scheme. *Id.* Further, the court noted that, "because of the design of the scheme and Feaster's

proficiency in running it, the scheme went undetected for two years. *Id. See also United States v. Moran*, 778 F.3d 942, 977 (11th Cir. 2015) (finding sophisticated means where "[t]he offense involved the widespread use of kickbacks, the falsification of group therapy notes, and the laundering of proceeds from the fraud").

Here, the defendant utilized sophisticated means to carry out her scheme because she used her position of trust to gain access to funds, falsified documents, utilized a system of payment lapping, and in so doing, was able to conceal her fraud for approximately seven years. This defendant worked for the Title Insurer for over 30 years and was even given 20% ownership in the company. Doc. 14 at 19. The defendant then used that position of trust to gain access to the Title Insurer's funds and embezzle them. *Id.* The defendant was not merely writing herself checks however, she engaged in a complex mortgage lapping scheme to conceal her embezzlement. Doc. 14 at 22. Specifically, the defendant lapped payments on mortgage loans between accounts so that the account deficits would go unnoticed. *Id.* The defendant also falsified numerous documents, including fraudulent payoff statements from lenders and altered HUD-1 statements. *Id.* Further, the defendant often made credit and debit entries in the Title Insurer's ledgers in an attempt to balance out the loan files and to disperse funds to pay off mortgages past the

6

settlement date. *Id.* Finally, the defendant was so adept at this scheme, that it went on undetected for approximately seven years.

The facts of this case are similar to those of *Feaster*. In *Feaster* the defendant falsified documents, created false entries in the VA system to ensure payment, and was so adept at her scheme that it went on for two years. 798 F.3d at 1382. Here, the defendant also made false entries in the Title Insurer's legers and created false documents, but in addition, this defendant engaged in mortgage lapping to further conceal her fraud. Finally, this defendant was so skilled at perpetuating her scheme, that her actions went undetected for approximately seven years. As such, just as in *Feaster*, the defendant's acts here are appropriately characterized as "sophisticated means" under USSG § 2b1.1(b)(10)(C).

## Conclusion

For the foregoing reasons, the United States recommends that the Court apply the two level increase to the defendant's base offense level under USSG § 2b1.1(b)(10)(C).

        Respectfully submitted,

        MARIA CHAPA LOPEZ
        United States Attorney

By: *s/ Amanda Daniels*
     Amanda Daniels
     Assistant United States Attorney
     Bar No. 111444
     400 W. Washington Street, Suite 3100
     Orlando, Florida 32801
     Telephone: (407) 648-7500
     Facsimile: (407) 648-7643
     E-mail: amanda.daniels@usdoj.gov

U.S. v. KATHRYN SMITH				Case No. 6:20-cr-00088-CEM-LRH

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

    David Hass, Esq.

                      */s/ Amanda Daniels*
                      Amanda Daniels
                      Assistant United States Attorney
                      Bar No. 111444
                      400 W. Washington Street, Suite 3100
                      Orlando, Florida 32801
                      Telephone: (407) 648-7500
                      Facsimile: (407) 648-7643
                      E-mail: amanda.daniels@usdoj.gov